315-0133, People of the State of Illinois, Appalachia, by Jasmine Morgan, v. Frederick Gonzalez of Cowling, by Jay Wigman May it please the Court, Counsel, I am Jay Wigman, an Assistant Appellate Defender with the Office of the State Appellate Defender, Counsel for Frederick Gonzalez, who asserts that the trial court erred when it denied his motion to suppress because, first, the stop was prolonged beyond the time reasonably needed to complete the mission of the stop, and second, because there was no separate Fourth Amendment basis on which to justify the extension of the stop. Ordinarily, I don't linger too long on the facts of a given case when arguing before this Court. I'm aware that the Court has reviewed the record, likely observed the DVDs as well, and read the transcripts, but I think it bears a little bit of time on the facts of this case because it is a factually intensive case. In the incident case, the defendant was driving what I would call a work van at approximately 11 o'clock at night. As he was doing so, he was using his active hazard lights because one of his headlights was out. And, in fact, he had been pulled over in another community for this same offense earlier that evening. So when the officer pulled him over, because this is a violation and there's no question about whether the stop was justified, when the officer pulled him over, the defendant was only able to give him the ticket instead of a license showing that, in fact, this had happened before and that there was no ability of the defendant to give him a license at that time. The officer spoke briefly with the driver. There was a passenger in this van as well. Nothing was noted about the passenger at that time. And the officer returned to his car, performed the license checks. Some of what the officer does is difficult to tell from the videotape because there is the use of code and, given technology, there's an increased use of a typewriter or a laptop. And so it's sometimes difficult to tell when exactly the officer has done something or what exactly he has done. But it appears that when he got to the car, he ran a check of the license. He requested a canine to come to sniff the unit. And he did that because when he was speaking with the defendant, and this was a summer day, the defendant was wearing a sleeveless shirt and on his left shoulder he had a tattoo of a marijuana. The officer indicated in his testimony at the suppression hearing that while he had never seen a case like this, he hadn't seen anything in the case law, and he didn't have any particular experience with people with tattoos indicating drug usage. It seemed suspicious to him. He thought it more likely than not that the defendant had marijuana with him in the car. The officer was asked specifically if he had any reason to believe, and he said no, but it seems to me more likely than not. So the officer on that basis indicated that he was going to request a canine to come sniff the car. He ran the license. It appears that at that time the license came back clear and valid. It can also suggest that that was a reference to the license plate. But part of the reason that I think that it came back clear and valid is that it was at that time, about five minutes into the stop, that the officer says, son of a buck on the tape. Like he was looking for something and it wasn't there. It was at that time also that he called for backup, and then Officer Sester arrived approximately eight minutes after that. After calling for the backup, then the license was run again. It's at the eight minute mark where it's confirmed that the license is valid and clear. And I had no trouble with the time frame up to this point. This Court and others have recognized that an eight minute to ten minute stop is certainly understandable given the time that it takes to run the license and the time that it takes to write out the traffic ticket or citation. Although it should be noted that the officer at the suppression hearing was unable at this point to say whether or not he had even begun to write the ticket. He certainly wasn't aware of whether the ticket had been written by that point and it wasn't ever returned to the defendant at the time of the stop. At approximately eight minutes then, the officer approached the car, spoke with the officer, and requested that he be given a photo identification card. He looked at the photo identification card, had his flashlight on it, I believe went back to the car, looked at it, and it was shortly after this that Officer Sester arrived as backup. The two officers spoke and Officer Kopech, the arresting officer, indicated to Officer Sester at that time that he had seen a tattoo of a marijuana leaf, he'd called for a dog, and he wanted to try to search the car. And there was a discussion about the best way for the officers to go about that. And one comment that was made by Officer Sester was, you know, if you want to toss the car, then how about if we return the license or the paperwork and at that time ask for consent. It was Officer Sester who was the one to request the driver's license or other identification from the passenger of the car. There had been no indication up to that point as to the reason for it, but Officer Sester requested and received identification from the passenger at about the 13 minute mark. That was run and it was about two minutes later, it was at the 17 minute mark, that the passenger came back with a warrant for his arrest. And it was known to the officers shortly thereafter that it was for a traffic matter and not for anything more significant than that. Do the officers need any suspicion to submit a stop, stop's okay, to call a drug dog? Can they do that every single traffic stop or is there something that's needed? I'm not concerned with the fact that the drug dog was called. And I would suggest that the state, when it argues that the drug dog wasn't called to prolong the stop, I would say that the reverse was true. The stop was prolonged to try to get the drug dog there. It's not a question about whether there was reasonable suspicion to call the dog. There's a question about reasonable suspicion as to whether the car could be searched and whether the matter could be prolonged. The tattoo itself did nothing to establish a reasonable and articulable suspicion to suspect that there were drugs in the car. It's the whole prolonging stop that ultimately creates the arrest because that's when they get the defendant out of the car because of this, I guess, the consent. So that's why I was wondering, you know, at that point they'd already cleared him and so I was just wondering if that prolonging to do that had to be somehow justified. I don't think that the request for the drug dog had to be justified. What had to be justified was the requesting of the driver's license from the passenger. That's the more troubling aspect, particularly given that it came 13 or so minutes into the stop, long after the basis of the stop had been accomplished. The officer had the information that he needed about the driver. He knew that the license was clear. He had confirmed the identification through a photo ID to the extent that that was actually in question. He had all the information that he needed and in some ways this is similar to the case of Baldwin, which I believe was authored by you, Justice O'Brien. And in that case, actually the officer had all the information that he needed at the four and a half minute mark. And it was considered, and the extension there was briefer. In fact, that total stop I believe took 13 minutes. But it was considered by this court to have been too long of a process and there was considered to have been no basis for, no Fourth Amendment basis that justified an articulable suspicion as the stop proceeded. And in that case, there was nervousness of a passenger. There was some action with his right hand that concerned the officer. There were other factors that simply didn't exist here. There was no commentary about the passenger in any aspect until his license came back as having a warrant out for his arrest. And to somewhat address the question that you asked a moment ago about whether or not reasonable suspicion was necessary to justify the call for the dog, ordinarily there wouldn't be a need for the officer to justify the request for the driver's license. And that has happened in many cases and it's understood and accepted in Harris in particular. But the driver's license in those cases, and I believe in Baldwin as well, was requested at the outset of the stop. Right at the beginning, let's make sure that we don't have any problems here. And that can be justified for officer safety. When it comes 13 minutes into a stop when all other avenues have been unavailable to the officer, then it becomes suspicious and it becomes what has been termed by, I believe, the court person Koutsakis and then repeated later, it becomes purely a subterfuge for being able to search the car. And that's what happened here. When these facts were, I guess just to then briefly summarize the facts, after the passenger was found to have a traffic warrant for his arrest, eventually there was the removal of the passenger from the car. And then there's a request or a directive made to the driver and we don't really know because Officer Sester wasn't mic'd up for this transaction. So the conversation that he had with the driver isn't really available to us. At that stage, however, the defendant came out of the car. And it's everything that comes afterward that's at issue in this case. This ended up not being a drug case or a paraphernalia case. It was a DUI case at that point. But when these facts were presented to the trial court, the trial court agreed that the stop was long, said that a lot of things were going on, but that the defendant could have avoided all of this had he simply refused consent. But it is our contention that the consent that was obtained is invalid because it wasn't timely requested. There is a requirement, whether it's through Terry or Cabayas or Harris, that there be a rational relationship between the reason to extend the stop and the initial stop. And that simply wasn't present in this case. The first question that we ask in a Terry analysis is whether it was justified at the inception. It clearly was in this case. The defendant was driving with defective equipment. There's no question about the stop. The second question, the more important here, is were the officer's actions reasonably related in scope to the reason for the stop? And that ended at about the eight-minute mark. Everything up to that point was appropriate. The request for the dog, the request for the license check, double-checking the license check is acceptable as well. But at that point, the officer had everything he needed to deal with the stop. And to that extent, you have to keep in mind that the passenger is completely unrelated to the driver's license situation. This wasn't a stop as in Harris where the officer, and he said it was his policy, that he always asks for the licenses of both the passenger and the driver so that if the driver has a problem and isn't able to drive the car away, rather than have a tow, the passenger can drive the car away. And in Harris, the driver's license was suspended. It was the same situation in Ruffin. The driver's license was invalid at that time. Here, there wasn't a question about that. The driver's license was valid. He didn't have it, but he presented the ticket that explained why he didn't have it. And he should have at that point been allowed to leave the scene. There's no reason, though, for the defendant to believe that he was free to leave or to refuse consent because those documents were never returned to him. He wasn't given his citation back. It doesn't appear that he was given his photo identification back. There was no reason for him to believe in those circumstances that he was free to leave. At this point, the mission should have been concluded. And all of the cases would say that where the driver's license has been provided, any concerns that the officer may have generated that present a reasonable, articulable suspicion that criminal activity as a foot had been extinguished. The fact that there was a drug tattoo doesn't seem to have been given much credit, even by the trial court, which implicitly recognized that there was no reasonable, articulable suspicion to justify the prolonging of the stop, but again, ruled on the grounds of consent. We would ask the court to find that the consent was not validly obtained because it was requested far beyond the time that was necessary to accomplish the mission of the stop. And therefore, under Terry, under Tobias, under all relevant law, the request for the defendant to step out of the car at that time was invalid. We therefore request that this court reverse the finding of the trial court and reverse the defendant's convictions outright because without the subsequent stop after the 23 minute mark, there is no evidence of intoxication of the driver. Good morning. May it please the court, your honors, counsel, my name is Jasmine Wharton. I represent the people of the state of Illinois in this matter. Here, the trial judge did not err in denying the defendant's motion to quash arrest and suppress evidence because the traffic stop in its entirety was proper. The length of the stop was reasonable based on the fact that the mission of the stop had evolved beyond the initial headlight being inoperable. So the traffic stop is a seizure and it's analogous in duration to an investigative stop observed under Terry v. Ohio. So the Supreme Court applies Terry analysis to judge the reasonableness of a stop. So under Terry, the first prong, whether or not the stop was justified at its inception, I think both parties agree that yes, the stop at its inception was proper. The defendant was swerving, he was driving with his hazards on, headlight was inoperable. So the actual stop in and of itself was proper. Now second to that, or on the second prong, the officer's actions during the course of the stop were reasonably related in scope to circumstances that originally justified the stop. So because the stop evolved, we have to look at the totality of the circumstances in determining whether or not the fact that the stop ended up being roughly 40 minutes was actually proper. And in this case, it was. Both prongs under Terry are satisfied. When did it start properly evolving? I'm sorry? When did the stop start properly evolving? From the start. The fact that the defendant was pulled over for the inoperable headlight and the officer checked the defendant's license. He checked it a total of four times. The first two times it came back invalid, this license number is invalid. He then checks again at the six minute mark. He finds that the number comes back valid. At that time he also calls for backup. He checks the license again at the nine minute mark, it comes back valid. But as counsel stated, he didn't have the physical license ID at that time. He just had the individual's name and the ticket that was given earlier, or the warning that was given earlier that day. So when he returns to defendant's van, he then asks for the physical license. After he gets the physical license, that's when backup arrives and they talk for about two minutes about the nature of the incident, what's going on, how they should move forward. The passenger's information is also gathered at that time, almost simultaneously. After checking the passenger's information, that's when they find out he has a warrant. So the stop is continuing on, but diligent police work is being completed as everything is going on. There are no stalling tactics that are being used. The fact that the officers want to get both the defendant driver's information and the passenger's information isn't improper. Because they are both stopped, they are both seized at that point, so it's fine for the officer to gain that information as long as it doesn't prolong the stop. How long was the stop? Total? Yes. Roughly 40 minutes. I'm sorry? I thought it was 50 minutes. So after the license has been checked four times, two times it was found invalid, two times it was found valid. Eight minutes it was valid. Nine minutes, but yes, nine minutes it was valid. Nine minutes it was valid, and then at 11 minute mark, that's when he asked for the physical license, just to confirm that the defendant has a physical license on his person. It was my understanding that he gave him the citation because he didn't have the license. Correct, and it's a little hazy in the video, but he does eventually give the officer his physical license at the 11 minute mark. Or just an ID of some nature? He gives him some form of identification that has his name on it. It's a little unclear from the video what the officer is being given at different points, and the audio isn't that great, but based on the testimony and the video, he gave his information, which was checked, and then the officer asked for some form of identification, which we presume to be a license. Okay, but you're not thinking that the presence of the tattoo is the reason why all of this happened? No, Your Honor, we do not. At least that's not your argument. It's the people's position that that's not the case. But once he confirmed whether it was an ID, license, whatever, that it's him, and the license we already know is valid, what else was there to do regarding the stop? So regarding the stop, after he receives the defendant's physical ID of some sort, that's when backup arrives and they talk for a few minutes. My presumption that it's police procedure when backup arrives that perhaps regardless of whether or not the stop could be completed at that point, you talk about what's happening during this incident, so backup is aware of what's going on. And at that time, the passenger's information was checked, and at the 17-minute mark, it's found that he has a warrant. So between the 11-minute mark and the 17-minute mark of the two officers speaking and the passenger's information being checked, that's when we find out we have a warrant. That's when an arrest ensues by the 23-minute mark. At that time, we see on the video the defendant opens his van door and then closes it. The officers approach the van, they ask the defendant if he gives consent to search the vehicle, and he does. He had an opportunity to say no. At that point, he wasn't in any trouble. Only the passenger was, who had just been arrested. And that's why the stop was prolonged. There was diligent police work being done throughout. There was no stalling that occurred. Because it doesn't mean... Suster, right? Yes, that's the backup officer. Okay, so Kopik, he gets the ID, he looks at it, it's the same person as is identified in the paper copy of the ticket, and he says then to Suster, so what's the strategy now? That's, I guess, what really concerns me. He stops somebody for equipment violation. He does find that he has a valid license. He has now determined that the person that gave him that piece of paper is the person that comes up with that valid license. The purpose of the stop is now complete. So what's the strategy now? What are they talking... I mean, what is that? What strategy as to how do I write a warning ticket or how do I write a ticket for equipment failure or violation? I guess this seems to me that this is the point where they have some suspicion or some concern about something, and it can't be about the violation, why the hazard lights, the headlight being out. It can't be that there isn't a valid license for the driver. What is it? So the audio is pretty choppy, and it's difficult to discern what exactly they're referring to, and if when they return the defendant's license or identification to him, if at that time they're going to ask for consent to search the vehicle. It's a little unclear, but what is clear to us is that while this police work is being done and the passenger's information is being checked, a warrant pops up. So that is the reason for the extension of the stop. Why? I'm sorry? Why? The passenger has a warrant for a traffic violation. What does that do to justify the extension of the stop? So because he has a warrant out for his arrest, now he's being arrested, and that extends the stop five minutes longer. And after they finally arrest him, that's when the defendant opens his car door, closes it, the police approach, asks that they can search. In this van, it's filled with the fumes of gasoline because there's lawn equipment in the back, and although the police have shined their flashlight inside the vehicle, it's my understanding that they couldn't see much. So I think it would be reasonable for them to ask to search the vehicle, and the defendant had an opportunity to say no. He could have completely refused it, and he decided not to. And upon stepping out of the vehicle, that's when he stumbled out. They could smell the alcohol on his breath, and field sobriety tests and a PBT were given at that point. Maybe it doesn't matter, but why would they have a reason to ask to search? Maybe they don't have to, but why would it be that after they've shined their flashlights in, and it was full of equipment, that then it would be reasonable to ask to search it? Why? I mean, if you shine a flashlight into my car, if I got stopped for having a headlight out, I mean, I guess, you know, why is that reasonable? Given, you know, I guess they know why they've stopped him. He had a headlight out. They know that it's him. They know he has a valid license. Why at that juncture are they saying, okay, and now let's search your car? I just, I don't know why any of that is reasonable for the purpose for which they stopped him. So, based on what happened in this case, I mean, because the audio isn't quite as strong as we would like it to be, it's difficult to tell and process all of what the police officers were thinking. I could say it was the opening of the car door that looked suspicious to them. Why is he opening his car door and no one asked him to get out of the car yet? It could be the fact that he had a hunch about the cannabis tattoo on defendant's arm and knew that he didn't have a search incident to arrest. He didn't have anything but asking voluntarily whether or not he could search the vehicle. I think is where that is essentially left, that he didn't have any other options but to ask for a voluntary search and that was granted to him by the defendant. Not under duress, there was no coercion. They asked the question and he granted it. So, it's once again the people's position that the traffic stop in its entirety was proper. The length of the stop was reasonable based on the fact that the mission of the stop had evolved throughout that roughly 40 minute time mark. If there aren't any further questions, we ask that you affirm the trial judge's decision below. Thank you. Thank you, Ms. Martin. Thank you. I'm not quite certain that I followed the last part of the argument but it seems to me that the indication was made by counsel that Kopech found himself in a situation with the defendant stepping out of the car that presented him with a need at that point to ask for consent because he hadn't been able to see into the car and because he thought at that point suddenly that the defendant was doing something suspicious. But I think that that implication is contrary to the evidence and the actions of the officers which indicate that from the very beginning the officer wanted to search inside the car. He wanted to look and his justification, which I don't think amounts to a justification, is that there was a cannabis tattoo on his arm. It was very clear that the officer was trying different means to be able to access the car and to inspect it, going from hoping that there was something on the license that would be able to get him into the car to then requesting eventually that the passenger provide a license, though there was no need for that whatsoever. The passenger didn't need to drive the car and therefore the request isn't justified the way it was in Harris and in Ruffin. And one of the concerns about, and counsel is certainly right, that the officers can request the driver's license of the passenger but only to the extent that it doesn't prolong the time. And here it did, and that was the point. That's why Officer Kopech was doing what he was doing. And as he was doing so, if that's allowed, then what we get to is if we have a passenger car with three passengers or four, then we try the driver first and that doesn't work. Now we go to the next passenger and we spend five minutes checking the license of every individual in the car, then we've got 20 minutes just to do that. And that should generally be enough time for the officer to accomplish what he wants to, which is to get a dog there. In no case that I had seen is there such a situation where the officer asks incrementally for a license from each of the passengers in the car. But there are a number of cases. Baldwin, I believe they won, had four passengers in the car. And licenses or identification were asked of each person at the time that the officer approached the car, went back and ran them, and again was able to do all of this in a four and a half minute time period. So that's one of the concerns that I have. If this is allowed, then that's an automatic extension that's going to be available and runs counter to the rule of Terry and Tobias and our Fourth Amendment law. I would note one quibble that I would have. The court pronounced, I believe, that it was a 53-minute stop, including the videotape. The videotape time seems to get truncated down, but there are portions of the video that are missing. And the court noted that and was partially penalizing the state for that. When it was reaching some of its findings, because there's approximately a 10-minute or so segment that simply isn't there on the video. All of that comes after the time concerns that are present here for the defendant that came way after the 23-minute mark. But during the investigation for DUI, there is a portion that's missing, and I think that that explains the discrepancy between the 40-minute guesstimate or the 53-minute mark that was indicated, I believe, by the court. So officially it was 53 minutes? I believe officially it was 53 minutes. And again, I don't think you even have to go that far for it to have been an overly prolonged stop. I think that once it passed the 8-minute mark or even the 11-minute mark, and then it just begins to add up, and it was too long at that point, not so much because of just absolute time, but because the officer had accomplished what he needed to do, and it was related to the basis for the stop. And there's nothing else that justified the officer's suspicion or the need to look into the car. The fact that he says he needed to look into the car because he couldn't see into the car seems to me to turn the plain view doctrine on its head. If there are no further questions, then I would simply again ask that this court reverse the finding of the trial court and reverse the defendant's convictions on the right. Thank you. I think most of your arguments today will take this matter under advisement. In fact, you could have written this position a little bit earlier shortly. But now it seems to me that there will be something that's going to turn. I don't know.